IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    CR No. 10-60109-AA-01

            Plaintiff,                        OPINION AND ORDER

    v.

DANIEL CARL ERNST,

            Defendant.

_____

Frank Papagni
Assistant United States Attorney
405 E 8th Ave.
Eugene, OR  97401
    Attorney for plaintiff

Terri Wood
Law Office of Terri Wood
730 Van Buren Street
Eugene, OR  97402
    Attorney for defendant

AIKEN, Judge:

    Defendant is charged with being a felon in possession of a

1    - OPINION AND ORDER

firearm in violation of 18 U.S.C. § 922(g)(1), unlawful
manufacture or possession with intent to deliver marijuana in
violation of 21 U.S.C. § 841(a)(1) and a related forfeiture
charge under 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461. If
convicted, the defendant is subject to the sentencing enhancement
provision of 18 U.S.C. § 924(e) and a mandatory minimum sentence
of fifteen years.

Defendant moves to dismiss all counts charged against him in
the three-count Superceding Indictment of July 20, 2011.
Defendant also moves to suppress certain statements and evidence
obtained in 2006 and 2010 and fruits of unconstitutional
searches. On February 10, 2012, the court held oral argument and
received testimony from one witness regarding defendant's Motion
to Suppress. Defendant's motions are denied.

## I. FACTS

On January 12, 2010 the defendant's son was arrested in
Illinois for the unlawful transportation of approximately sixty
pounds of marijuana and five pounds of hashish. During a
subsequent investigation of that crime, federal agents obtained a
search warrant authorizing the search of defendant's property.
The warrant described the scope of the property to be searched as
"the premises known as 48589 East 3rd Street, Oakridge, Oregon."
Gov't's Opp'n to Mot. to Suppress, Ex. 1 at 5. Though the
defendant and his sister each own separate portions of the

2   - OPINION AND ORDER

property located at 48589 East 3rd Street, the properties share a single address.

On August 18, 2010 federal agents executed the search warrant, seizing two firearms, ammunition, marijuana plants, and dried marijuana.

The two firearms recovered from defendant's home were a Lorcin, model L380, a .380 caliber pistol with serial number 187834, manufactured in the State of California, and a Remington, model 700, .30-06 caliber, bolt action rifle with serial number C6298907, manufactured in the State of New York. Agents also recovered 12 rounds of Winchester .380 caliber ammunition bearing head stamp WIN 380 AUTO. Agents seized approximately eighty-nine marijuana plants, over ten kilograms of processed and delivery-ready marijuana, including dried marijuana in plastic bags, a marijuana drying stall, digital scales and other marijuana distribution paraphernalia.

## II. DISCUSSION

Defendant first moves to dismiss the felon in possession charge, arguing that 18 U.S.C. § 922(g)(1) unconstitutionally exceeds Congress's authority under the Commerce Clause, usurps the States' police powers, and violates defendant's Second Amendment right to keep and bear arms.

Defendant next moves to dismiss the marijuana-related charges arguing that 21 U.S.C. § 841(a)(1) is an unconstitutional

3   - OPINION AND ORDER

violation of the Fifth, Ninth and Tenth Amendments where the only
unlawful drug alleged is marijuana. Defendant further argues that
the related forfeiture charge and the violation of 18 U.S.C. §
924(e) should also be dismissed.

Defendant also moves to dismiss the indictment in its
entirety, arguing he is not the fictional entity named in the
indictment, but is a sovereign free person. Based on that
assertion, defendant contests personal and subject matter
jurisdiction, claims Foreign State Immunity, and denies any
involvement with the prior convictions referenced in the
indictment. Defendant also argues that he was denied effective
assistance of counsel. Lastly, defendant moves to suppress
evidence seized during 2006 and 2010 searches of his property.

A.  Constitutionality of 18 U.S.C. § 922(g)(1)

1.Commerce Clause Analysis

Defendant argues that Title 18 U.S.C. § 922(g)(1) is an
unconstitutional exercise of Congress's Commerce Clause power,
both on its face and as applied to the defendant.

However, the United States Supreme Court has expressly held
18 U.S.C. app. § 1202(a), the predecessor statute of § 922(g)(1),
a valid exercise of Congress's Commerce Clause power. United
States v. Scarborough, 431 U.S. 563 (1977). The Court held the
statute valid though the statute required only "the minimal nexus
that the firearm have been, at some time, in interstate

4    - OPINION AND ORDER

commerce." Id. at 575 (emphasis added). The Ninth Circuit has
also held that the jurisdictional element of § 922(g)(1) ensures
a sufficient nexus between possession of firearms and interstate
commerce to constitute a valid exercise of Congress's Commerce
Clause power. United States v. Jones, 231 F.3d 508, 514 (9th Cir
2000); United States v. Polanco, 93 F.3d 555 (9th Cir. 1996);
United States v. Hanna, 55 F.3d 1456, 1462 (9th Cir. 1995).[1]

Here, defendant concedes that no firearms are manufactured
in Oregon, and therefore all firearms in Oregon have traversed
state lines. This defeats defendant's argument that his firearm
possession was noncommercial and intrastate in nature, as all
firearms possessed in Oregon have, at minimum, a past connection
to interstate commerce and thus fall within reach of § 922(g)(1).
Therefore, the statute is constitutional facially and as applied
to this defendant.

## 2. Tenth Amendment Analysis

Defendant next argues that § 922(g)(1) unconstitutionally
usurps the States' police powers, in violation of the Tenth
Amendment.

However, the United States Supreme Court has held that where

---

[1]Defendant also relies on United States v. Morrison. 529
U.S. 598 (2000). However, the Ninth Circuit has repeatedly held
that the jurisdictional element of §922(g)(1) sufficiently
distinguishes it from the VAWA statute at issue in Morrison,
which lacked any jurisdictional element connecting the conduct at
issue to interstate commerce. Jones, 231 F.3d at 514-15.

the Constitution delegates power to Congress, "the Tenth
Amendment expressly disclaims any reservation of that power to
the States." New York v. United States, 505 U.S. 144, 156 (1992).
As explained above, the Ninth Circuit has expressly upheld §
922(g)(1) as a valid exercise of Congress's Commerce Clause
power. Hanna, 55 F.3d at 1462. Therefore, because Congress acted
under one of its enumerated powers in enacting § 922(g)(1), the
statute does not unconstitutionally usurp the States' police
powers.

### 3. Second Amendment Analysis

Defendant also argues that § 922(g)(1) violates his Second
Amendment right to bear arms. Defendant contends that possession
of a firearm for protection and hunting purposes is protected by
the Second Amendment, providing an exception to the prohibitions
of § 922(g)(1). Defendant relies primarily on a 2008 Supreme
Court ruling, District of Columbia v. Heller, 554 U.S. 570, 635
(2008). Although the Heller Court emphasized the importance of
the Second Amendment to the right to protect one's self, family
and property, the Court explicitly stated that the Second
Amendment right is "not unlimited," and the Court's holding
should not be read as "cast[ing] doubt on longstanding
prohibitions on the possession of firearms by felons...." Id. at
626, 628-29.

The Ninth Circuit flatly rejected the argument that Heller

6    - OPINION AND ORDER

casts doubt on the constitutionality of § 922(g)(1). <u>United States v. Vongxay</u>, 594 F.3d 1111, 1114 (9th Cir. 2010). The court deemed all felons, regardless of the nature of their felony convictions, "categorically different" from individuals having a right to bear arms. <u>Id.</u> at 1115.

Here, defendant's status as a felon defeats his argument that he has the right to bear arms, regardless of the non-violent nature of his prior convictions. Therefore, defendant's Motion to Dismiss the felon in possession charge is denied.

<u>B. Motion to Dismiss Marijuana-Related Charges</u>

Defendant next argues that where the only unlawful drug alleged is marijuana, 21 U.S.C. § 841(a)(1) violates the Fifth, Ninth, and Tenth Amendments to the Constitution. On these grounds defendant moves to dismiss the marijuana-related charges, including the forfeiture charge under 18 U.S.C. § 924(e).

Defendant claims § 841(a)(1) violates his rights to due process and equal protection, because the classification of marijuana as a Schedule I substance is arbitrary and irrational. Defendant cites no legal authority for this assertion. To the contrary, in a recent decision the United States Supreme Court stated, "Congress has expressly found that [marijuana] has no acceptable medical uses," legitimizing the classification of marijuana as a Schedule I substance. <u>Gonzalez v. Raich</u>, 545 U.S. 1, 27 (2005).

7   - OPINION AND ORDER

Defendant also argues the Attorney General's refusal to
reclassify marijuana constitutes a failure to abide by the
procedures required by the Controlled Substances Act. Again, the
defendant presents no legal authority to support this assertion.[2]

Defendant next argues § 841(a)(1) violates the Ninth
Amendment. Defendant grounds his argument in two theories.
First, defendant argues the manufacture, distribution and
possession of marijuana are victimless crimes and therefore not
subject to federal prosecution under the Ninth Amendment.
Defendant also contends that the Ninth Amendment precludes
prosecution for the cultivation of marijuana within the curtilage
of one's home. Defendant cites no legal authority for either of
these assertions, but concedes that various courts, including the
Ninth Circuit, have considered and rejected these claims. See
Stubblefield v. Gonzales, 150 Fed. Appx. 630, 632 (9th Cir.
2005)(unpublished opinion) (rejecting the argument that §
841(a)(1) violates the Ninth Amendment, and holding that the
Controlled Substances Act, 21 U.S.C. §801 et. seq., is a
constitutional exercise of Congress's Commerce Clause power).

The defendant also argues that when the only drug alleged is
marijuana, § 841(a)(1) violates the Tenth Amendment. As discussed

---

[2]In Raich, The United States Supreme Court did not reach the
Fifth Amendment due process issue but suggested the legislative
process is the more appropriate forum for policy-based arguments.
545 U.S. at 33.

8    - OPINION AND ORDER

above, where "Congress acts under one of its enumerated powers,

there can be no violation of the Tenth Amendment." Jones, 231

F.3d at 515, citing United States v. Mussari, 95 F.3d 787 (9th

Cir. 1996). In Raich, the United States Supreme Court held §

841(a)(1) "squarely within Congress' commerce power," even where

cultivation and possession of marijuana are noncommercial,

intrastate in nature and in compliance with state law. 545 U.S.

at 19. Because the enactment of § 841(a)(1) falls within one of

Congress's enumerated powers, that power is not reserved to the

states, and the statute does not violate the Tenth Amendment.

Although Federal law may "radically increase" penalties  for

similar conduct under Oregon law, the "Supremacy Clause

unambiguously provides that if there is any conflict between

federal and state law, federal law shall prevail." Raich, 545

U.S. at 29.  Under the Supremacy Clause, § 841(a)(1) prevails

over Oregon State law and thus does not constitute an

unconstitutional usurpation of state police power. Defendant's

arguments that § 841(a)(1) violates the Fifth, Ninth and Tenth

Amendments are without merit.

Accordingly, defendant's Motion to Dismiss the marijuana

manufacture and possession charge and the related forfeiture

charge is denied.

C. Motion to Dismiss the Indictment

Defendant also moves to dismiss the indictment in its

9    - OPINION AND ORDER

entirety. Defendant primarily contests this Court's jurisdiction and raises an effective assistance of counsel argument.

Defendant first argues that he is not the fictional entity named in the indictment. Defendant makes this bold assertion without any factual support. Though defendant claims he has a good faith belief he is not the individual named in the indictment, defendant's actions suggest the contrary. The government alleges that in October of 2011 the defendant, using the name Daniel Carl Ernest, sought medical benefits from the United States Department of Veterans Affairs. If true, this seriously undermines the defendant's claim that he is not the individual named in the indictment.

Regardless, the government acknowledges that without the defendant's concession on this point, the government will have the burden of proving that the defendant was in fact convicted of the prior offenses listed in the indictment under Count 1. Thus, the determination of this issue is more appropriate for trial.

Defendant next argues that he is a sovereign free person who has not violated the laws of nature and is therefore exempt from personal jurisdiction. This argument is without merit. See United States v. Masat, 948 F.2d 923, 934 (5th Cir. 1992)(rejecting as "frivolous" defendant's argument that he is a "freeman" and thus not subject to the court's personal jurisdiction); United States v. Gerads, 999 F.2d 1255 (8th Cir. 1993) (rejecting defendants'

contention that they are not United States citizens but only
"Free Citizens of the Republic of Minnesota" as "lacking merit
and frivolous."); see also United States v. Ward, 1999 WL 369812
at *2 (9th Cir. 1999) (rejecting defendant's "sovereign citizen"
argument as "frivolous") (unpublished opinion).

Defendant's personal jurisdiction argument is equally
unavailing. Under 18 U.S.C. § 3231, Federal district courts have
original jurisdiction over offenses against the laws of the
United States. United States v. Hanson, 2 F.3d 942 (9th Cir.
1993). Regardless of whether the defendant violated the laws of
nature, he is accused of violating the laws of the United States
and is therefore subject to this Court's subject matter
jurisdiction.

Defendant's third argument that he is shielded from federal
prosecution by foreign state immunity under 28 U.S.C. § 1602 is
unfounded. Defendant claims he is an "exclusive citizen" of the
"Republic for Oregon," an entity different from the federal
territory of the State of Oregon and not subject to the laws and
jurisdiction of the United States. Defendant presents no evidence
that the federal government recognizes the "Republic of Oregon"
as a foreign state nor any applicable case law to support his
"exclusive citizen" theory.

To the contrary, defendant was found and arrested in the
District of Oregon for allegedly violating the laws of the United

States. Accordingly, defendant is subject to the laws and
jurisdiction of the United States under 18 U.S.C. § 3231. See
United States v. Lorenzo, 995 F.2d 1448, 1456 (9th Cir.
1993)(rejecting defendants' claim that they were nationals of the
Kingdom of Hawaii and thus not subject to the jurisdiction of the
district court).

Defendant also challenges the jurisdiction of the United
States to enforce federal criminal laws. As set forth in the
government's response to this motion, defendant's claim has been
soundly rejected by a number of courts. See United States v.
Farmer, 583 F.3d 131, 151-52 (2d Cir. 2009); Turner v. United
States, 2011 WL 5595939 at *5-6 (S.D. Ala Sept. 8, 2011). I
decline to depart from these rulings.

Lastly, defendant claims he was denied his Sixth Amendment
right to effective assistance of counsel. At the present stage in
the proceedings, defendant's only contention is that he was
denied effective assistance of counsel of his choice resulting in
the prosecutor's refusal to subpoena him to testify before the
grand jury. Although there is a qualified right to select one's
attorney, the Sixth Amendment does not guarantee an indigent
criminal defendant the right to appointed counsel of their
choice. United States v. Rewald, 889 F.2d 836, 856 (9th Cir.
1989); United States v. Ray, 731 F.2d 1361, 1365 (9th Cir. 1984).
Additionally, individuals under investigation by a grand jury

12   - OPINION AND ORDER

have no right to appear or testify before the grand jury. <u>United
States v. Fritz</u>, 852 F.2d 1175, 1178 (9th Cir. 1988). Therefore,
defense counsel's unwillingness or failure to request that the
prosecutor subpoena the defendant to testify before the grand
jury does not rise to the level of ineffective assistance of
counsel.

Regardless, as the government indicates, the ordinary
procedure for challenging the effectiveness of counsel is through
collateral attack <u>after</u> the conviction and direct appeal. <u>United
States v. Birges</u>, 723 F.2d 666, 670 (9th Cir. 1984). Therefore,
defendant's Motion to Dismiss the Indictment is denied.

D. Motion to Suppress 2010 Evidence

Next, defendant moves to suppress the evidence seized on
August 18, 2010 from a locked storage container located on
defendant's property, arguing that the search exceeded the scope
of the warrant.

At the outset the government concedes it does not intend to
offer the evidence sought to be suppressed in its case-in-chief,
but may offer it as rebuttal evidence or to impeach defendant,
should he testify. Regardless, in opposing the motion to
suppress, the government argues that the search did not exceed
the scope of the warrant, and even if the search did exceed the
warrant, the search was objectively reasonable, and therefore
lawful.

13  - OPINION AND ORDER

Defendant argues that the search warrant specified particular units located at 48589 East 3rd Street, Oakridge, Oregon, that were to be searched, all of which are located on a piece of property owned by defendant's sister. Defendant claims that the officers exceeded the scope of the warrant when they crossed a road intersecting the property and entered the parcel of 48589 East 3rd Street owned by the defendant.

In asserting his claim, defendant relies primarily on the language in Attachment B to the Search warrant, which reads in pertinent part:

> The location to be searched is the premises known as 48589 East 3rd Street, Oakridge, Oregon, and is described as a parcel of land that borders the Willamette National Forest at the NE section of the town of Oakridge... There is a green and white yurt-type structure on the south side of the driveway, and there is brown wooden dwelling next to the green and white yurt. There is a wooden storage structure on the north side of the driveway.

Defendant argues that the search warrant particularly described the place to be searched as the units specifically mentioned in the warrant - the yurt and two wooden storage structures. Defendant argues that because these structures are all located on defendant's sister's property, the warrant did not authorize officers to cross the road and search the portion of 48589 East 3rd Street owned by the defendant.

However, a plain reading of the search warrant indicates that the place to be searched was the general premises known as

14   - OPINION AND ORDER

48589 East 3rd Street, Oakridge, Oregon. <u>See</u> <u>Maryland v.</u>
<u>Garrison</u>, 480 U.S. 79, 82 (1987) (a reading of the warrant's
plain language indicated the intended extent of the search). The
remaining language appears to be purely descriptive, intended not
to limit the search to those particular structures, but rather to
describe the place to be searched. Therefore, the search warrant
authorized a search of the premises known as 48589 East 3rd
Street, and the search of defendant's portion of the property did
not exceed the scope of the warrant.

Even if the warrant was overbroad, the search was lawful
because the officers held an objectively reasonable belief their
search was proper. The court will not suppress evidence obtained
during a search where it was objectively reasonable for officers
to believe they were searching the correct area. <u>See</u> <u>Maryland v.</u>
<u>Garrison</u>, 480 U.S. 79, 81 (1987) (upholding the validity of a
search warrant even though the Court held it did not specify the
place to be searched with sufficient particularity because the
officers held an objectively reasonable belief their search was
lawful) <u>Id.</u> at 85.

Here, the officers had an objectively reasonable belief they
were searching the correct area. The warrant expressly indicated
"the location to be searched is the premises known as 48589 East
3rd Street, Oakridge, Oregon." The warrant authorizes a search of
the entire property located at 48589 East 3rd Street, without

15  - OPINION AND ORDER

limiting the search to particular areas of the property according to ownership. Therefore, even if the warrant was overbroad, it was objectively reasonable for the officers to search the entirety of the 48589 East 3rd Street property. Accordingly, defendant's Motion to Suppress evidence is denied.

E. Motion to Suppress 2006 Statements and Evidence

Finally, defendant moves to suppress the introduction of any evidence seized or statements obtained during a 2006 encounter between defendant and law enforcement agents and the subsequent search of defendant's Oakridge property. The government seeks to introduce such evidence to show intent, motive, knowledge, and lack of mistake. The government also contends that defendant's conduct in 2006 is "inexplicably intertwined" with the current charges. Defendant argues that the evidence and statements are inadmissible, because they were obtained after an unlawful and warrantless incursion on defendant's property.

On August 31, 2006, federal agents conducted aerial surveillance and discovered and photographed an outdoor marijuana grow on property later determined to be 48589 East 3rd Street, Oakridge, Oregon. On September 6, 2006, state deputies walked down the driveway of defendant's property, past "No Trespassing" and "Beware of Dog" signs, intending to contact an occupant of the residence in an attempt to gain cooperation and consent to search.

16  - OPINION AND ORDER

An individual (later identified as defendant) approached the deputies and said they were not welcome and that they needed to leave. The deputies then asked defendant about the marijuana grow that was observed during the aerial surveillance. Defendant allegedly made statements that he had been growing marijuana for a long time and "no one was going to stop him." Defendant also expressed concerns of being threatened by the deputies and said if he had a gun he would be pointing it at them.

The deputies advised defendant that they would obtain a search warrant for his property if he chose not to cooperate. Defendant did not give voluntary consent, and the deputies obtained his full name and ran a records check, finding outstanding arrest warrants. Defendant was taken into custody and advised of his *Miranda* rights. Defendant displayed "continued reluctance" and a search warrant was obtained.

Execution of the warrant resulted in the seizure of marijuana, firearms (including two firearms that defendant is charged with illegally possessing in this case), marijuana plants, and $33,000 in cash. Defendant was cited but never prosecuted. On December 28, 2006, Carl Ernst spoke with Lane County Evidence Deputy Sandy Sanders about the release of defendant's property. On January 10, 2007, the firearms and cash were released to Carl Ernst after he provided his Oregon Driver's License.

17   - OPINION AND ORDER

Defendant argues that his 2006 inculpatory statements regarding marijuana were obtained as a result of the state deputies' unlawful intrusion on the curtilage of his property, and that the statements and evidence seized after execution of the search warrant are inadmissible as fruits of the unlawful intrusion. I find that defendant spontaneously and voluntarily made inculpatory statements to deputies whose presence on the property's driveway was lawful.

As postured by the parties, the first issue is whether the deputies entered the "curtilage" of defendant's residence when they encountered defendant on his driveway. It is well-established that the Fourth Amendment protection against warrantless searches extends to the curtilage around one's home but not to open fields," as "no expectation of privacy legitimately attaches to open fields." Oliver v. United States, 466 U.S. 170, 180 (1984).

Whether an area is curtilage depends on whether "an individual reasonably may expect that the area in question should be treated as the home itself." United States v. Dunn, 480 U.S. 294, 300 (1987). The Supreme Court has identified four factors to consider: 1) "the proximity of the area claimed to be curtilage to the home"; 2) "whether the area is included within an enclosure surrounding the home"; 3) "the nature of the uses to which the area is put"; and 4) "the steps taken by the resident

18   - OPINION AND ORDER

to protect the area from observation by people passing by." Id. at 301 (citations omitted). However, "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration – whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Id.

Here, defendant presents little evidence to support his contention that the deputies' location on the driveway was within protected curtilage. Defendant argues that deputies were "near" a mobile home on the property when they encountered defendant and that he posted a "No Trespassing" sign on his driveway. However, simply posting a "No Trespassing" sign fails to demonstrate "that the expectation of privacy was legitimate in the sense required by the Fourth Amendment." Oliver, 466 U.S. at 182. Rather, the sign is only one factor in the court's inquiry. Id. at 183.

Regardless of whether the deputies were within the curtilage, defendant cannot establish that the deputies engaged in an unlawful "search" or that his statements and evidence seized after execution of the warrant were products of an unlawful intrusion. As the government points out, the deputies did not enter defendant's driveway for surveillance or observation purposes; rather, they were attempting to contact defendant or another occupant and seek consent to search the

19   - OPINION AND ORDER

property. United States v. Hammett, 236 F.3d 1054, 1059 (9th Cir. 2001) ("Law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants."). Given this lawful purpose, defendant cannot establish an unlawful intrusion.

Moreover, defendant cannot show that his inculpatory statements "resulted" from the deputies' so-called intrusion into curtilage area. United States v. Shetler, 665 F.3d 1150, 1157 (9th Cir. 2011). Rather, deputies asked defendant about a marijuana grow that was lawfully observed through aerial surveillance, and defendant voluntarily and spontaneously made inculpatory statements which led to discovery of the arrest warrants and furthered the application for a search warrant. See Polanco, 93 F.3d at 560 (in determining whether a statement is voluntary, the court looks at the surrounding circumstances and the combined effect of the entire course of the officers' conduct upon the defendant). In other words, deputies did not utilize evidence obtained from an unlawful entry of curtilage to elicit statements from defendant. Shetler, 665 F.3d at 1157-58. Therefore, regardless of whether deputies encroached on protected curtilage, defendant's statements were made voluntarily and are not products of an illegal search.

CONCLUSION

For the foregoing reasons, defendant's Motions to Dismiss

(docs. 30, 31, 32, 99), Motions to Suppress (docs. 58, 76, 85), and Motion to Exclude (doc. 57) are DENIED. The government's Motions for hearing on admissibility (docs. 48, 75) are GRANTED.

IT IS SO ORDERED.

Dated this _____ day of March, 2012.

_____
Ann Aiken
United States District Judge