IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DANIEL CARL ERNST, | Case No. 6:17-cv-00839-AA<br>6:10-cr-60109-AA |
| Petitioner, | **OPINION AND ORDER** |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

AIKEN, Judge:

Pursuant to 28 U.S.C. § 2255, petitioner Daniel Carl Ernst, a federal prisoner, moves to vacate, set aside, or correct his sentence. He argues that his sentence was based on a mandatory minimum that was erroneously applied to him and that his trial and sentence violated his rights under the United States Constitution and the Speedy Trial Act. For the reasons set forth below, petitioner's § 2255 motion is granted and the judgment in this case is vacated pending resentencing.

## BACKGROUND

On September 15, 2010, petitioner was indicted on felon-in-possession and drug trafficking charges. On February 23, 2012, I granted petitioner's request to proceed *pro se*, and

PAGE 1 – OPINION AND ORDER

appointed his former defense lawyer as standby counsel. On April 3, 2012, trial began. After the jury was sworn, petitioner and the government gave opening statements. When petitioner did not return after the lunch break, I dismissed the jury for the day and issued a bench warrant for petitioner's arrest.

Four days later, petitioner was arrested. Magistrate Judge Coffin ordered him detained. On April 11, 2012, I granted petitioner's motion for a mistrial and ordered a competency examination. Based on the results of that examination, I found petitioner was competent to stand trial and to continue to represent himself.

On November 19, 2013, a second trial began. After the jury was sworn, court recessed for lunch. At that point, petitioner and the government informed me they had agreed to a stipulated-facts trial on the first charge in the indictment only. Petitioner signed a written waiver of his right to a jury trial. Based on the parties' stipulations, I found petitioner guilty on the first charge, felony possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Pursuant to the parties' agreement, the government stated it intended to dismiss the remaining charges at sentencing.

On May 14, 2014, I sentenced petitioner to fifteen years' imprisonment, to be followed by five years' supervised release. Adopting the Presentence Report in full, I concluded that fifteen years' imprisonment was the statutory mandatory minimum because petitioner had three previous state-law convictions for manufacture or delivery of a controlled substance, a "serious drug offense" within the meaning of the Armed Career Criminals Act ("ACCA").[1] The government then dismissed the remaining charges.

---

[1] Petitioner was convicted under Or. Rev. Stat. § 475.992(1)(a). In 2005, the Oregon Legislature renumbered the provision but did not otherwise change the text; it is now located at Or. Rev. Stat. § 475.752(1).

On appeal, petitioner was represented by counsel. He challenged his conviction and sentence on several grounds, arguing that his waiver of his Sixth Amendment right to counsel was invalid, that the guns discovered during a 2006 search were found pursuant to an illegal search warrant, that his state drug convictions were not serious drug offenses under the ACCA because the Oregon law does not impose a statutory maximum of ten years or more, and that his conviction violated the Commerce Clause. *United States v. Ernst*, 623 F. App'x 333, 333–35 (9th Cir. 2015) (unpublished). The Ninth Circuit rejected each of those arguments. *Id.* On June 8, 2016, the Supreme Court denied petitioner's request for review, rendering his conviction and sentence final on direct appeal. *Ernst v. United States*, 136 S. Ct. 2426 (2016).

On May 30, 2017, petitioner filed the instant petition to vacate or correct his sentence. About a month later, he filed a motion to appoint counsel. I denied the request for counsel, finding that petitioner had not met the standards under 18 U.S.C. § 3006A(a)(2)(B). I did, however, grant petitioner's request for an extension of time to file his reply. The reply was initially due September 7, 2017; in a letter dated September 8, 2017, petitioner asked for a seven day extension. I granted him an eighteen day extension and set a new deadline of September 25, 2017. Although petitioner's reply was not docketed until October 2, 2017, he states that he mailed it on September 25. Accordingly, I have considered all arguments made in the reply brief.[2]

---

[2] Petitioner's brief in support of his initial § 2255 motion is thirty-five pages long. The government's response is eight pages long. Petitioner's reply is seventy-seven pages long. Not only does the reply far exceed the thirty-five page limit imposed by Local Rule 7-2(b)(1), a seventy-seven page reply to an eight-page argument is unreasonable. Nevertheless, in view of petitioner's *pro se* status, I have considered the reply in its entirety.

PAGE 3 – OPINION AND ORDER

## DISCUSSION

In his § 2255 petition, petitioner asserts five claims for relief.[3] His first, second, and fourth claims concern the use of his prior Oregon convictions as predicate offenses under the ACCA. His third claim is a hodgepodge of sovereign citizen and constitutional arguments, grouped together as violations of "Common-Law Due Process." Motion to Vacate or Correct Sentence Under 28 U.S.C. § 2255 6. His fifth claim is for violation of his rights under the Speedy Trial Act. His first claim is the only one that requires sustained consideration. Accordingly, I first address that claim and then consider the remaining claims.

I. *First Claim for Relief:* Sandoval *and the ACCA*

In his first claim for relief, petitioner argues that the ACCA's mandatory minimum was improperly applied to him because *Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017),[4] makes clear that his prior convictions under Oregon law are not qualifying predicate offenses. In *Sandoval*, the petitioner, a lawful permanent resident of the United States, sought review of a decision of the Board of Immigration Appeals that he was subject to deportation because his conviction for delivery of a controlled substance under Oregon law qualified as an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.* at 988. The Ninth Circuit granted review and remanded the BIA's decision, holding that the petitioner's conviction did not qualify as an aggravated felony because the Oregon statute was not a categorical match for a "drug trafficking crime" under 8 U.S.C. § 1101(a)(43)(B). *Id.* at 993. Specifically, the court concluded that an individual could be convicted under the Oregon statute for merely soliciting delivery of a

---

[3] The petition is timely because it was filed less than one year after petitioner's conviction became final on direct review. *See* 28 U.S.C. § 2255(f)(1).

[4] Petitioner actually cites *Sandoval v. Yates*, 847 F.3d 697 (9th Cir. 2017). However, that opinion was amended and superseded by *Sandoval v. Sessions*.

PAGE 4 – OPINION AND ORDER

controlled substance, as distinct from actually delivering a controlled substance. *Id.* at 989–92. That rendered the state statute categorically overbroad compared to the federal comparator, which does not penalize solicitation of delivery as a felony. *Id.* at 993.

Like the immigration statute at issue in *Sandoval*, the ACCA imposes certain consequences based on categorization of prior convictions. Specifically, the ACCA mandates a fifteen-year minimum sentence in cases where a defendant convicted of a firearms offense has three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). As noted, at petitioner's sentencing, I concluded the ACCA's mandatory minimum applied to petitioner based on three convictions in Oregon state court. Each of those convictions was for manufacture or delivery of a controlled substance, in violation of the same statute at issue in *Sandoval*. Petitioner argues that *Sandoval*'s holding that the Oregon statute is overbroad applies in the ACCA context as well. He contends that, due to that overbreadth, his convictions under Oregon law are not categorically "serious drug offense[s]" within the meaning of the ACCA.

A. *Preliminary Matters*

The government suggests several reasons why this Court lacks authority to consider petitioner's first claim for relief. I begin by considering whether any of those arguments has merit.

The government first argues that petitioner's challenge to the categorization of his prior convictions as serious drug offenses is barred by the relitigation doctrine. That doctrine provides that "[w]hen a [petitioner] has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000). But the relitigation

doctrine does not bar this claim. Petitioner did not have a full and fair opportunity to argue that his prior convictions were not serious drug offenses under *Sandoval* because *Sandoval* was not decided until January 2017, more than six months after his conviction became final on direct review.

Ordinarily, the failure to raise a claim on direct review bars a petitioner from asserting that same claim in a § 2255 petition unless he can show cause and prejudice for the procedural default. *United States v. Withers*, 638 F.3d 1055, 1064 (9th Cir. 2011). But procedural default is an affirmative defense that can be waived by the government. *McDaniels v. Kirkland*, 813 F.3d 770, 775 n.3 (9th Cir. 2015). The government has not argued that petitioner's *Sandoval* claim is procedurally defaulted. Accordingly, petitioner is not obligated to establish cause and prejudice.

The government next contends *Sandoval* cannot be applied retroactively on collateral review under the rule set out in *Teague v. Lane*, 489 U.S. 288, 311 (1989). But *Teague* is inapplicable to this case for two reasons. First, *Teague* limits only the retroactive application of new *constitutional* rules. *See Reina-Rodriguez v. United States*, 655 F.3d 1182, 1188 (9th Cir. 2011) ("If the new rule is not founded on constitutional concerns, it does not implicate *Teague*."). *Sandoval* was not a constitutional decision; it was a statutory interpretation decision. *See Ezell v. United States*, 778 F.3d 762, 766–67 (9th Cir. 2015) (holding that decisions employing the categorical approach are statutory interpretation cases, even though the analysis often implicates constitutional principles). Second, *Teague* restricts retroactive application of procedural rules, not substantive ones. When a decision "alter[s] the conduct that substantively qualifies" as a predicate offense "under the categorical approach," it announces a substantive

rule. *Reina-Rodriguez*, 655 F.3d at 1189. *Sandoval* therefore may be retroactively applied on collateral review.[5]

Finally, the government argues that this Court lacks authority to consider petitioner's *Sandoval* argument because of *United States v. Parry*, 479 F.3d 722, 726 (9th Cir. 2007). In *Parry*, the defendant argued his Oregon state convictions for delivery of methamphetamine were not serious drug offenses within the meaning of the ACCA. *Id.* at 724. Under the ACCA, a conviction qualifies as a "serious drug offense" if it is "an offense under State law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). In *Parry*, the defendant "concede[d] that [his prior convictions] involve[d] distributing a controlled substance," but argued that there was a mismatch between the state crimes and the ACCA regarding penalty. 479 F.3d at 724. Specifically, the defendant argued that the Oregon statute was overbroad because, under the Oregon Sentencing Guidelines, the maximum penalty for delivery of methamphetamine was 90 months. *Id.* The Ninth Circuit rejected that argument, noting that the Oregon Sentencing Guidelines set out the presumptive sentence, not the maximum sentence, and that the applicable *statutory* maximum for Class B felonies like delivery of methamphetamine was ten years. *Id.* at 724–25. The court held the Oregon statute was a categorical match to the ACCA as to penalty.

---

[5] Although the Ninth Circuit has squarely held that the *Teague* rule applies to § 2255 petitions, *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667–68 (9th Cir. 2002), "there is some doubt under current Supreme Court jurisprudence" whether *Teague* applies to federal prisoners who seek federal relief, *Reina-Rodriguez*, 655 F.3d at 1189. The Supreme Court has expressly declined to decide that question. *See Danforth v. Minnesota*, 552 U.S. 264, 269 n.4 (2008) (expressing "no opinion" on whether the *Teague* rule applies to cases brought under § 2255).

PAGE 7 – OPINION AND ORDER

*Parry* does not prevent me from considering defendant's *Sandoval* argument. It is true, of course, that I am bound to follow the precedential decisions of the Ninth Circuit. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect. Binding authority must be followed unless and until overruled by a body competent to do so.") But although the court in *Parry* couched its holding in broad terms—that "all three of Defendant's prior drug-related convictions constituted 'serious drug offenses' under the ACCA"—it reached that conclusion without ever considering arguments like those raised in *Sandoval*. *Parry*, 479 F.3d at 726. Neither *Parry* nor any other Ninth Circuit decision addresses whether Oregon's drug delivery statute, when compared to the ACCA, is overbroad as to *delivery*.[6]

B.  *Merits*

This brings me to the merits of petitioner's argument. The question is whether petitioner's prior convictions for delivery of a controlled substance are predicate offenses under the ACCA, thereby triggering the statute's fifteen-year mandatory minimum. Petitioner argues that the Ninth Circuit's decision in *Sandoval* makes clear that his prior convictions are not predicate offenses and that the mandatory minimum never should have been applied to him.

Determining whether a state conviction qualifies as an ACCA predicate is often difficult: state criminal statutes are not uniform, so although all fifty states have laws on the books

---

[6] *United States v. Shumate*, 329 F.3d 1026, 1029 (9th Cir. 2003), rejected the argument that Oregon law is overbroad as to delivery with respect to the U.S. Sentencing Guidelines' definition of "controlled substance offense." *Shumate* is not a bar to petitioner's argument because the Guidelines' definition of that phrase and the ACCA's definition of "serious drug offense" differ. *See* U.S.S.G. § 4B1.4 cmt. n.1 ("It is to be noted that the definitions of "violent felony" and "serious drug offense" as defined in 18 U.S.C. § 924(e)(2) are not identical to the definitions of "crime of violence" and "controlled substance offense" used in § 4B1.1 [of the Guidelines.]").

PAGE 8 – OPINION AND ORDER

prohibiting delivery of a controlled substance, the text of those statutes varies from state to state. Further complicating the matter, different state courts may reach divergent results when faced with similar or even identical text. All these differences affect whether a prior conviction qualifies as a "serious drug offense" within the meaning of the ACCA. 18 U.S.C. § 924(e)(1).

In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court established a methodology for analyzing whether a prior conviction qualifies as a predicate offense under the ACCA. Using this "formal categorical approach," the sentencing court "look[s] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600. The "means by which the defendant, in real life, committed his crimes" has "no relevance to whether the offense is an ACCA predicate." *Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016). Instead, the task is to assess whether the state statute penalizes *only* conduct that qualifies as a predicate under the federal statute. If the state statute penalizes "a greater swath of conduct" than the federal provision, the state statute is deemed categorically overbroad and the conviction does not trigger the mandatory minimum.[7] *Id.* In assessing a statute's reach, federal courts often look to state courts' interpretations of the statute. *See United States v. Grisel*, 488 F.3d 844, 850–51 (9th Cir. 2007).

As noted above, the ACCA defines "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance[.]" 18 U.S.C. § 924(e)(2)(A)(ii). As relevant here, the scope of "serious drug offense"

---

[7] When a statute "list[s] elements in the alternative, and thereby define[s] multiple crimes[,]" courts may apply a "modified categorical approach." *Mathis*, 136 S. Ct. at 2249. Under the modified categorical approach, the sentencing court may look beyond the statute of conviction to the charging document, plea agreement, plea-colloquy transcript, or similar documents to determine "what crime, with what elements, a defendant was convicted of." *Id.* The court then returns to the formal categorical approach to determine whether the elements of that crime are a match to the federal statute. *Id.* Neither party has suggested that the modified categorical approach should be applied here.

PAGE 9 – OPINION AND ORDER

turns on the meaning of the term "involving" in 18 U.S.C. § 924(e)(2)(A)(ii). The ACCA does not define "involving" and the Ninth Circuit has not interpreted it. Other courts to have considered the question have held that "involving" sweeps broadly. *See, e.g., United States v. Bynum*, 669 F.3d 880, 886 (8th Cir. 2012) (deeming "involving" an "expansive term that requires only that the conviction be related to or connected with drug manufacture, distribution, or possession, as opposed to including those acts as an element of the offense" (internal quotation marks omitted)); *United States v. Gibbs*, 656 F.3d 180, 185 (3d Cir. 2011) ("Congress used the term 'involving' to carve the class of serious state drug crimes broadly."). But some courts have noted that the reach of "involving" is not limitless. *See, e.g., Gibbs*, 656 F.3d at 185 (cautioning that "there are of course limits to how wide we can construe th[e] class" of crimes included in the ACCA's definition of "serious drug offense"); *United States v. McKenney*, 450 F.3d 39, 45 (1st Cir. 2006) ("[W]hile the term 'involving' . . . is not to be too narrowly read, it also is not to be too broadly read. Not all offenses bearing any sort of relationship with drug manufacturing, distribution, or possession with intent to manufacture or distribute will qualify as predicate offenses under the ACCA."). The First Circuit's rule is that a state statute is not a categorical match for a serious drug offense if it penalizes conduct with only a "remote or tangential" relationship to drug manufacture or distribution. *McKenney*, 450 F.3d at 45.

These limitations are rooted in legislative intent. The statute does not say that *any* state offense involving a controlled substance is a serious drug offense; it requires a connection to manufacture, distribution, or possession with intent to distribute. That suggests that some crimes may involve controlled substances yet nonetheless fall outside the broad sweep of the ACCA's definition of "controlled substance offense." Courts wrestling with the scope of the word "involving" have interpreted the statute's text as Congress's attempt to bring "into the statute's

reach those who intentionally enter the highly dangerous drug distribution world." *United States v. Vickers*, 540 F.3d 356, 365 (5th Cir. 2008). Considering the severity of the ACCA's mandatory minimum, it makes sense that Congress did not intend to include in the ACCA's definition of "serious drug offense" conduct with only a tenuous connection to the illegal drug trade.

With that background in mind, I turn to the Oregon statute under which petitioner was convicted. Oregon law makes it "unlawful for any person to manufacture or deliver a controlled substance." Or. Rev. Stat. § 475.752(1). The term "deliver" means "the actual, constructive or attempted transfer" of a controlled substance from one person to another. *Id.* § 475.005(8). "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." *Id.* § 161.405(1).

*Sandoval* does not say whether the Oregon statute is overbroad with respect to the ACCA. That is because *Sandoval* was not an ACCA case; it was an immigration case. Both the ACCA and the immigration statute in *Sandoval* concern drug offenses, but the two laws are not textually identical. Under the immigration statute, a conviction may subject an immigrant to removal proceedings if it is for an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). "Aggravated felony" is further defined in the statute to include any "drug trafficking crime." 8 U.S.C. § 1101(a)(43)(B). As noted above, the ACCA does not use the phrase "aggravated felony" or "drug trafficking crime"; instead, a conviction is a predicate offense if it is for a "serious drug offense," which is defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance[.]" 18 U.S.C. § 924(e)(2)(A)(ii). Thus, *Sandoval* is not dispositive.

But *Sandoval* is not irrelevant, either. The *Sandoval* court analyzed the same state statute at issue in this case, carefully considering decisions of the Oregon courts interpreting the statute. Thus, the *Sandoval* court's reasoning sheds substantial light on the reach of the Oregon statute—a key consideration when comparing that statute to the ACCA.

In *Sandoval*, the Ninth Circuit surveyed Oregon case law and concluded that an individual could be convicted of delivery of a controlled substance for soliciting (offering) to deliver a controlled substance, even if that individual never actually possessed the controlled substance. 866 F.3d at 990. For example, the Ninth Circuit cited *State v. Self*, 706 P.2d 975 (Or. Ct. App. 1985). In that case, the defendant, while serving a sentence in county jail, attempted to raise funds to post bail for another inmate, Brown. *Id.* at 977. When the potential lender asked about collateral, the defendant explained where Brown would get the money to repay the loan and also stated that Brown and the lender could go to San Francisco to get cocaine as a "further reward[.]" *Id.* The Oregon Court of Appeals affirmed the defendant's conviction for delivery of cocaine. *Id.*

> In summarizing *Self*, the *Sandoval* court noted that the defendant in that case
> 
> did not possess or even offer to deliver the cocaine. Instead, he tried to arrange the release of a third party, promising that same third party would obtain cocaine in exchange for assistance in the third party's release. There was no agreement to accomplish this scheme. Further, the court recited no facts indicating the third party's willingness to perform the promised criminal acts. Nevertheless, the [Oregon Court of Appeals has] pointed to *Self* as the "illustrative" case supporting its conclusion that "delivery" . . . includes solicitation.

*Sandoval*, 866 F.3d at 990–91. The *Sandoval* court further found it significant that *Self*'s holding had "not been disturbed by later Oregon case law[,]" and indeed had been reaffirmed by *State v. Pollock*, 73 P.3d 297, 299 (Or. Ct. App. 2003). *Id.* at 991.

The defendant in *Self* did not possess or distribute the cocaine. But did his actions *involve* distributing or possessing with intent to distribute cocaine? Viewed in the light of the federal case law summarized above, this is a close question. On the one hand, the defendant was convicted for telling a potential lender that if he provided money to post bail for a third person, that third person would help the lender get cocaine. Giving "involving" its broadest construction, the statements are related or connected with the illegal drug trade. On the other hand, the relationship to that trade was rather tangential: the *Self* defendant did not possess the drugs, never intended to possess the drugs, was not going to pay or be paid for the drugs, and talked about obtaining the drugs only in nonspecific terms. Arguably, the connection between the *Self* defendant's actions and the illegal drug trade is more tenuous than the connection between that trade and the typical case of simple possession; after all, a person who possesses a controlled substance for personal use generally obtained that substance from a distributor. And it is well-established that simple possession does not fall within the ACCA's definition of "controlled substance offense." *See, e.g., United States v. Brandon*, 247 F.3d 186, 192 (4th Cir. 2001).

Federal appellate courts have held that the following conduct falls under the ACCA's "controlled substance offense" umbrella: offering to sell drugs even when the offer is not "genuine, made in good faith, or . . . accompanied by an actual intent to distribute a controlled substance[,]" *Bynum*, 669 F.3d at 887; conspiring to possess drugs in order to distribute them, *McKenney*, 450 F.3d at 45; attempting to deliver drugs, *United States v. Williams*, 488 F.3d 1004, 1008 (D.C. Cir. 2007); and attempting to possess drugs in order to distribute them, *United States v. King*, 325 F.3d 110, 114 (2d Cir. 2003). But none of those cases addressed a connection to the illegal drug trade as attenuated as the one at issue in *Self*. In *Bynum*, for example, the

defendant argued that Minnesota's delivery statute was overbroad because it permitted conviction for solicitation of delivery even if the defendant did not intend to actually deliver the drugs. 669 F.3d at 887. The Eighth Circuit rejected that argument, concluding that "so long as th[e] defendant has intentionally made an offer to sell a controlled substance, he or she has 'intentionally entered the highly dangerous drug marketplace as a seller,' which 'is the kind of self-identification as a potentially violated person that Congress was reaching by the ACCA.'" *Id.* (quoting *Vickers*, 540 F.3d at 365–66). In *Self*, the defendant not only never intended to possess the drugs to sell them—he never represented that he would participate in the transaction at all.

The rule of lenity "requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government." *United States v. Mills*, 621 F.3d 914, 916–17 (9th Cir. 2010). Congress tied the ACCA's harsh mandatory minimum sentence to state offenses "involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance[.]" 18 U.S.C. § 924(e)(2)(A)(ii). It is not clear whether Congress intended that statutory phrase to sweep broadly enough to include the conduct for which the defendant in *Self* was penalized. Accordingly, applying the rule of lenity and bearing in mind of the *Sandoval* court's careful examination of Oregon law, I conclude that Oregon's drug delivery statute is not categorically a serious drug offense under the ACCA.

II.  *Remaining Claims*

Petitioner's remaining claims do not require much discussion. Petitioner's second claim is that the Ninth Circuit erred in addressing his argument that his prior state convictions are not predicate offenses under the ACCA due to disparities in marijuana penalties under state and federal law. As petitioner implicitly acknowledges by asking me to correct the Ninth Circuit's

"error," he presented this argument on direct appeal. *United States v. Ernst*, 623 F. App'x 333, 334 (9th Cir. 2015) (unpublished). The Ninth Circuit's decision that petitioner's prior convictions were serious drug offenses notwithstanding the differences in state and federal penalties is law of the case. *United States v. Scrivner*, 189 F.3d 825, 827 (9th Cir. 1999). Petitioner's second claim therefore fails.

Petitioner's third claim, for violation of "Common-Law Due Process," involves the following arguments: that because growing marijuana was not a common law crime, the federal government lacks jurisdiction to criminalize it now; that no controversy was presented to the grand jury because the indictment exceeded the scope of the Commerce Clause; that he was deprived of his right to a jury trial because I limited his questioning during *voir dire*, rendering the jury a "rubber stamp" jury and giving him no option but to agree to a stipulated-facts trial; and that both I and Judge Coffin must be relieved of our posts as judicial officers because our approval of and participation in numerous Fourth Amendment and due process violations falls short of Article III's good behavior requirement. Acknowledging that these arguments were not raised on direct appeal, petitioner asserts them by way of a claim for violation of his Sixth Amendment right to effective assistance of appellate counsel.

None of these arguments has merit. It is well-established that the federal government has the power to criminalize the manufacture, distribution, and possession of marijuana. *See Gonzales v. Raich*, 545 U.S. 1, 15 (2005). The district court has wide latitude when conducting *voir dire*, and petitioner has not shown that *voir dire* in this case impaired his ability to "test the jury for bias or partiality[.]" *United States v. Goland*, 959 F.2d 1449, 1454 (9th Cir. 1992). And both this Court and the Ninth Circuit considered and rejected petitioner's contentions regarding waiver of his right to counsel and warrants obtained without probable cause.

Appellate counsel has no obligation to make frivolous arguments, so petitioner's Sixth Amendment argument fails. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring a petitioner to show prejudice in order to make out an ineffective assistance of counsel claim).

Petitioner's fourth claim is a vague assertion that the state convictions used to enhance his sentence may have defects. He fleshes this claim out in some detail in the reply brief. But a petition under § 2255 cannot be used to collaterally attack state convictions. *Daniels v. United States*, 532 U.S. 374, 382 (2001). If petitioner has problems with his state convictions, he must begin by pursing the appropriate state post-conviction remedies.

Finally, petitioner's fifth claim, that his rights under the Speedy Trial Act were violated, is barred because Speedy Trial Act arguments are waived if they are not raised before trial. 18 U.S.C. § 3162(a)(2); *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1132 (9th Cir. 2005). Petitioner did not make a Speedy Trial Act argument before trial, and because he represented himself at trial, he cannot revive his Speedy Trial Act claim through an ineffective-assistance-of-counsel claim.

## CONCLUSION

For the reasons stated above, petitioner's motion to vacate, set aside, or correct his sentence (doc. 292) is GRANTED. The judgment in petitioner's criminal proceeding (doc. 256) is VACATED. I will direct my Courtroom Deputy to set a date for resentencing, at which time petitioner may submit objections to his Presentence Report pursuant to Federal Rule of Criminal Procedure 32(i)(1)(D) and both sides may argue for an appropriate and lawful sentence. Counsel will be appointed to represent petitioner at resentencing.

IT IS SO ORDERED.

Dated this 13th day of ~~October~~ November 2017.

*Ann Aiken* (signature)

Ann Aiken
United States District Judge