IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DANIEL CARL ERNST,

Petitioner,

vs.

UNITED STATES OF AMERICA,

Respondent.

Case No. 6:17-cv-00839-AA
6:10-cr-60109-AA
**OPINION AND ORDER**

---

AIKEN, Judge:

In November, I granted petitioner Daniel Carl Ernst's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. That decision rested on my determination that, after the Ninth Circuit's decision in *Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017), manufacture/delivery of a controlled substance under Oregon law is not categorically a "serious drug offense" under the Armed Career Criminals Act ("ACCA") and therefore cannot trigger the ACCA's fifteen-year mandatory minimum.

The government filed a motion for reconsideration, which the parties argued at a hearing on January 31, 2017. For the reasons set forth below, the government's motion for reconsideration is denied.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

On November 19, 2013, petitioner was convicted of felony possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On May 14, 2014, I sentenced petitioner to fifteen years' imprisonment, to be followed by five years' supervised release. Adopting the Presentence Report in full, I concluded that fifteen years' imprisonment was the statutory mandatory minimum because petitioner had three previous state-law convictions for manufacture/delivery of a controlled substance. On appeal, the Ninth Circuit affirmed petitioner's conviction and sentence. *United States v. Ernst*, 623 F. App'x 333, 333–35 (9th Cir. 2015) (unpublished). On June 8, 2016, the Supreme Court denied petitioner's request for review, rendering his conviction and sentence final on direct appeal. *Ernst v. United States*, 136 S. Ct. 2426 (2016).

In May 2017, petitioner filed the instant petition to vacate, set aside, or correct his sentence. He asserted five claims for relief, four of which I rejected as meritless. Petitioner's remaining claim was that the ACCA's mandatory minimum was improperly applied to him because *Sandoval* made clear that his prior convictions under Oregon law are not qualifying ACCA predicate offenses. I agreed and vacated petitioner's sentence, holding that the Oregon manufacture/delivery statute was overbroad as to delivery and thus not a categorical match for a "serious drug offense" under the ACCA. 18 U.S.C. § 924(e)(2)(A)(ii). My analysis was guided by *Sandoval*, in which the Ninth Circuit held that Oregon's manufacture/delivery statute was not a categorical match for a "drug trafficking crime" under the federal immigration statutes. 866 F.3d at 993.

## STANDARDS

Ordinarily, requests for reconsideration are governed by Federal Rule of Civil Procedure 59(e). *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000). But because petitioner

PAGE 2 – OPINION AND ORDER

has not yet been resentenced, there is currently no final judgment in this case—which means that Rule 59 does not apply. *Id.* at 1048. This Court has inherent authority to modify its own interlocutory orders. *Id.* at 1049; *see also United States v. Jerry*, 487 F.2d 600, 604 (3d Cir. 1973) ("[T]he power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment and is not inconsistent with any of the Rules."). Even though courts have that inherent authority, however, they "should be loathe to [exercise it] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."[1] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (internal quotation marks omitted).

## DISCUSSION

The government urges reconsideration on two grounds. First, it asks me to reconsider my holding that Oregon's manufacture/delivery statute is overbroad as to delivery with respect to the ACCA's definition of "serious drug offense." In the alternative, it contends that even if the statute is overbroad as to delivery, it is divisible. The government argues that a review of the *Shepard* documents in this case shows that petitioner has three prior convictions for *manufacture* of a controlled substance, so that the Oregon statute's overbreadth as to *delivery* has no bearing on the appropriateness of petitioner's designation as an armed career criminal. The government has failed to show clear error or manifest injustice as to the first argument. And I decline to

---

[1] In the end, the main difference between a motion to reconsider a final judgment and a motion to reconsider an interlocutory order appears to be whether strict time limits apply. *See, e.g., Marlyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.*, 571 F.3d 873, 880 (2009) (applying Rule 59(e) case law to a request for reconsideration of an interlocutory order); Fed. R. Civ. P. 6(b)(2) (providing that the Rule 59 and 60 time limits are jurisdictional).

PAGE 3 – OPINION AND ORDER

consider the second argument because the government waived it by failing to raise divisibility in its response to the § 2255 petition.

With respect to the government's first argument, I acknowledge—as I did in the order granting the § 2255 petition—that whether Oregon's manufacture/delivery statute is overbroad as to delivery with respect to the ACCA's definition of "serious drug offense" is a "close question." *Ernst v. United States*, 2017 WL 5490869, *6 (D. Or. Nov. 13, 2017). Nevertheless, none of the arguments marshaled by the government here persuade me that the prior opinion is clearly erroneous or works a manifest injustice. *Christianson*, 486 U.S. at 817.

Judge Hernandez recently held that, even after *Sandoval*, a conviction under Oregon's manufacture/delivery statute is a "controlled substance offense" under the Sentencing Guidelines. *United States v. Harms*, 2017 WL 4918513, *2 (D. Or. Oct. 31. 2017). But *Harms* does not justify reconsideration for three reasons. First, decisions of this Court are not binding precedent. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). Second, *Harms* expressly acknowledged that *Sandoval* creates doubt as to whether Oregon delivery/manufacture of a controlled substance is properly classified as a controlled substance offense under the Guidelines. *See Harms*, 2017 WL 4918513 at *2 ("The Ninth Circuit's recent decision in *Sandoval* suggests, but does not require[,] a different result.").

Third, *Harms* was a Guidelines case, not an ACCA case. As a result, the outcome in *Harms* was dictated by *United States v. Shumate*, 329 F.3d 1026, 1029 (9th Cir. 2003), in which the Ninth Circuit expressly rejected the argument that Oregon's statute was overbroad as to delivery with respect to the Guidelines' definition of "controlled substance offense." When the

Ninth Circuit has decided an issue in a published opinion, this Court may depart from that holding only when intervening authority has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). *Sandoval* and its discussion of *State v. Self*, 706 P.2d 975 (Or. Ct. App. 1985), cast serious doubt on *Shumate*—but *Sandoval* and *Shumate* are not clearly irreconcilable.

The tension between *Shumate* and *Sandoval* plays out differently here than in *Harms* because neither precedent speaks directly to whether the Oregon statute is overbroad with respect to the *ACCA*. On the one hand, the government is correct that there are strong similarities between the Guidelines definition of "controlled substance offense" and the ACCA's definition of "serious drug offense." The ACCA defines "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance[.]" 18 U.S.C. § 924(e)(2)(A)(ii). The Guidelines state that

> [t]he term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). The application notes expressly state that the definition of "controlled substance offense" is "not identical" to the ACCA's definition of "serious drug offense." *Id.* § 4B1.4 cmt. n.1. Notwithstanding that statement, however, it is hard to see much daylight between the two statutes on the point relevant in this case. The application notes provide that the "offenses of aiding and abetting, conspiring, and attempting to commit such offenses" are included in the Guidelines' definition of "controlled substance offense." *Id.* It is clear that *some forms* of solicitation to commit drug crimes qualify as both "serious drug offense[s]" under the

PAGE 5 – OPINION AND ORDER

ACCA and "controlled substance offense[s]" under the Guidelines. The question is whether the *full scope* of solicitation offenses penalized by Oregon law, as elucidated in *Self* and *Sandoval*, are categorically within those definitions. Indeed, if I were deciding this case pre-*Sandoval*, I likely would have been persuaded that *Shumate* was the most on-point authority.[2]

But *Sandoval* pulls in the other direction. As set forth in detail in the order granting the § 2255 petition, even though *Sandoval* was not an ACCA case, its examination of *Self* strongly suggests that the Ninth Circuit would conclude that the Oregon law sweeps too broadly, capturing acts that do not bear a close enough relationship to the illegal drug trade to constitute conduct "involving" controlled substance manufacture, distribution, or possession.

In other words, no precedential Ninth Circuit decision speaks directly to the overbreadth/ACCA question presented here. And the two most relevant authorities, if extended to the ACCA context, point to diametrically opposed results. Faced with that difficulty, I chose to apply *Sandoval*, which is the more recent decision and the decision that more exhaustively

---

[2] The government cites *United States v. Terrell*, 593 F.3d 1084, 1087 n.1 (9th Cir. 2010), for the proposition that "a court's analysis of convictions applies equally to ACCA definitions and Guidelines definitions." U.S.'s Mot. Reconsider 5. Read in context, that seemingly-broad statement in *Terrell* plainly referred to the *residual clauses* of the ACCA's and Guidelines' respective "crime of violence" and "violent felony" definitions. *See id.* at 1093 (holding that the defendant's convictions qualified as residual-clause violent felonies); *United States v. Jennings*, 515 F.3d 980, 991 n.11 (9th Cir. 2008) ("Because U.S.S.G. § 4B1.2(a)'s definition of a crime of violence contains language tracking the 'otherwise' clause in § 942(e)(2)(B)(ii), we have interpreted the provisions in a parallel manner."). Contrary to the government's assertion, the Ninth Circuit never has held or suggested that any offense qualifying as a Guidelines controlled substance offense is *per se* a serious drug offense under the ACCA. *See United States v. Jackson*, 546 F. App'x 643, 646 (9th Cir. 2013) (unpublished) (rejecting application of Guidelines precedent to an ACCA case). As noted above, the Guidelines' application notes specifically provide that the Guidelines' definition of "controlled substance offense" is not identical to the ACCA's definition of "serious drug offense." U.S.S.G. § 4B1.4 cmt. n.1. It is a well-accepted principle of statutory construction that the use of different terminology suggests some difference in substance. *Cf. Mohamed v. Palestinian Authority*, 132 S. Ct. 1702, 1708 (2012). *Shumate* is therefore not binding authority with respect to the classification of ACCA predicate offenses.

explores the reach of the Oregon statute. The fact that a strong argument exists for resolving this case in a different manner does not justify reconsideration.

The government notes that Judge Fisher, who authored *Sandoval*, sat on the three-judge panel that affirmed petitioner's conviction and sentence. *See Ernst*, 623 F. App'x at 334. That panel considered and rejected petitioner's argument that his manufacture/delivery convictions were not ACCA predicates. *Id.* I am not persuaded by the government's suggestion that Judge Fisher's participation in affirming petitioner's conviction is evidence he would reject petitioner's *Sandoval* argument. Petitioner's direct-appeal argument regarding the designation of his prior convictions as ACCA predicates was about the penalty attached to those convictions; his § 2255 argument, by contrast, focuses on the swath of conduct the statute of conviction penalizes. There is no reason to think that the direct-appeal panel considered the argument petitioner now advances.

I decline to consider the government's argument that Oregon's manufacture/delivery statute is divisible and that the *Shepard* documents in this case establish that petitioner has three prior convictions for the "functionally separate crime[]" of manufacture of a controlled substance. *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014). The government waived any argument related to divisibility and the modified categorical approach by failing to raise it in its response to the § 2255 petition. *See United States v. Maria-Acosta*, 780 F.3d 1244, 1250 (9th Cir. 2015) (proceeding to apply the modified categorical approach because the defendant waived his argument that the statute in question was not divisible); *cf. United States v. Ankeny*, 502 F.3d 829, 841 n.7 (9th Cir. 2007) ("We need not decide whether the amendment applies retroactively, though, because the government . . . never argued in briefing or oral argument that the amendment should apply retroactively.").

explores the reach of the Oregon statute. The fact that a strong argument exists for resolving this case in a different manner does not justify reconsideration.

The government notes that Judge Fisher, who authored *Sandoval*, sat on the three-judge panel that affirmed petitioner's conviction and sentence. *See Ernst*, 623 F. App'x at 334. That panel considered and rejected petitioner's argument that his manufacture/delivery convictions were not ACCA predicates. *Id.* I am not persuaded by the government's suggestion that Judge Fisher's participation in affirming petitioner's conviction is evidence he would reject petitioner's *Sandoval* argument. Petitioner's direct-appeal argument regarding the designation of his prior convictions as ACCA predicates was about the penalty attached to those convictions; his § 2255 argument, by contrast, focuses on the swath of conduct the statute of conviction penalizes. There is no reason to think that the direct-appeal panel considered the argument petitioner now advances.

I decline to consider the government's argument that Oregon's manufacture/delivery statute is divisible and that the *Shepard* documents in this case establish that petitioner has three prior convictions for the "functionally separate crime[]" of manufacture of a controlled substance. *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014). The government waived any argument related to divisibility and the modified categorical approach by failing to raise it in its response to the § 2255 petition. *See United States v. Maria-Acosta*, 780 F.3d 1244, 1250 (9th Cir. 2015) (proceeding to apply the modified categorical approach because the defendant waived his argument that the statute in question was not divisible); *cf. United States v. Ankeny*, 502 F.3d 829, 841 n.7 (9th Cir. 2007) ("We need not decide whether the amendment applies retroactively, though, because the government . . . never argued in briefing or oral argument that the amendment should apply retroactively.").

## CONCLUSION

For the reasons stated above, the government's motion for reconsideration (doc. 307) is DENIED. I will direct my Courtroom Deputy to set a date for resentencing.

IT IS SO ORDERED.

Dated this 13th day of February 2018.

_____
Ann Aiken
United States District Judge